UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **AMERICAN ALUMINUM** ) | Case No. 5:09CV00763 |
| **EXTRUSIONS OF OHIO, LLC** ) | |
| ) | |
| **Plaintiff,** ) | **JUDGE SARA LIOI** |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| **NEBRASKA PLASTICS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

This matter is before the Court on a motion for summary judgment filed by Plaintiff American Aluminum Extrusions of Ohio, LLC ("AAEO"). (Doc. No. 29.) For the following reasons, the motion is GRANTED.

**I. Statement of Facts and Procedural History**

AAEO, a manufacturer of aluminum products, entered into an Exclusive Supply and Distributor Agreement (the "Agreement") with Defendant Nebraska Plastics, Inc. ("NPI"). Dated February 1, 2006, the Agreement conferred upon NPI (with certain exceptions not relevant here) exclusive rights to distribute AAEO's aluminum fencing products, while obligating NPI to meet certain minimum purchasing requirements, subject to AAEO's fulfillment of "reasonable quality, lead time, sales and marketing support, and delivery requirements" described in Exhibit C to the Agreement. NPI agreed to pay for any order "net 45 days from date of shipment," with all past due amounts bearing interest at the lower of 9% per annum or the maximum rate allowable by applicable law. The Agreement included a provision entitling AAEO to recover reasonable attorney's fees and costs of collection incurred in pursuing past due amounts.

From 2006 to 2008, NPI purchased considerable quantities of product from AAEO, with the purchases falling into two general categories: aluminum fencing products and extrusions. Concerns eventually developed regarding fading problems with the paint used on some of the aluminum fence product, giving rise to potential warranty claims and return issues relative to the affected goods. Responding to these issues, in the summer of 2008, NPI stopped payment on all its open accounts with AAEO. At the time, open invoices amounted to $253,413.18 for aluminum fence products and $111,604.17 for extrusions.

AAEO filed this suit for breach of the Agreement, accusing NPI of improperly failing to pay the balances due and owing on the open invoices. NPI answered and counterclaimed, alleging that AAEO defaulted in its obligations by failing to comply with the "reasonable quality, lead time, sales and marketing support, and delivery requirements" provision of the Agreement and breaching its express and implied warranty obligations by delivering defective product.

AAEO moves for summary judgment on its contract claim, seeking damages of $308,851.99, plus interest, attorney's fees, and costs. (Doc. No. 29.) NPI opposed the motion, (Doc. No. 31), and AAEO replied, (Doc. No. 32.) The matter is ripe for decision.

## II. Law and Analysis

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must draw all reasonable inferences from the record in the light

most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court may not weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. AAEO's Breach of Contract Claim

By virtue of the Agreement's choice of law provision, Ohio law governs this dispute; specifically, because the contract involved the sale of goods, Ohio's version of the Uniform Commercial Code applies. Under Ohio law, recovery for breach of contract requires the plaintiff to prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 173 Ohio App. 3d 284, 294 (10th Dist. 2007) (quoting *Powell v. Grant Med. Ctr.*, 148 Ohio App. 3d 1, 10 (10th Dist. 2002)).

The parties do not dispute that: a valid, enforceable contract (the Agreement) existed between AAEO and NPI; AAEO delivered to NPI a considerable quantity of product; NPI resold to third-parties all product delivered by AAEO; NPI stopped paying for product delivered pursuant to the Agreement, leaving unpaid invoices, after adjustments,[1] totaling $308,851.99. NPI acknowledges that AAEO delivered the goods called for by the Agreement, and NPI accepted. This triggered AAEO's entitlement to the purchase price [Ohio Revised Code § 1302.65(A)] which NPI concedes it never paid. Nevertheless, NPI seeks to avoid summary judgment with three principal contentions: (1) that the language of the Agreement setting forth

---

[1] The face amount of the open invoices totals $365,017.35. The adjustments include a deduction of $89,950.31 for returned materials, a reversal of a prior issued discount of $26,026.98, and a restocking charge of $1,757.97, for a net credit of $56,165.36. Applying the net credit to the invoice balance yields the amount sought by AAEO: $308,851.99. The evidence filed by AAEO along with its motion supports these figures and, excepting the disputes specifically discussed herein, NPI does not take issue with the numbers.

NPI's obligation to pay is ambiguous, and therefore presents a genuine issue of material fact as to the parties' intent; (2) that defects in the fencing product delivered by AAEO gave NPI reasonable grounds for insecurity, and AAEO failed to meet NPI's demand for adequate assurances of performance under Ohio Revised Code § 1302.67, justifying NPI's suspension of performance; and (3) that NPI revoked its acceptance under Ohio Revised Code § 1302.66 due to AAEO's delivery of non-conforming goods. NPI also takes issue with the amount owed, claiming entitlement to credits or offsets for returns and warranty claims made by its customers, and unrelated purchases by AAEO.

### 1. The Agreement is Unambiguous

NPI acknowledges the validity of the Agreement, but contends that an ambiguity in the terms renders the parties' intention a question of fact, precluding summary judgment. *See Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 138 Ohio App. 3d 57, 74 (4th Dist. 2000). According to NPI, the language of section 7 of the Agreement specifying that, upon termination of the Agreement by either party, "each party shall pay any monies due to the other party," contains ambiguity because it "fails to take into account the events leading up to a termination or default." (Def.'s Opp'n at 14). NPI asserts that by manufacturing and selling defective products, AAEO defaulted first, resulting in termination of the Agreement and rendering the contractual language governing NPI's obligation to "pay any monies due" under the Agreement ambiguous. This argument lacks merit.

The interpretation of a written contract, including whether the language admits of any ambiguity, is a question of law for determination by the court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). Courts "may not use extrinsic evidence to create an

ambiguity," rather, "the ambiguity must be present on the face of the contract." *Westbrock v. W. Ohio Health Care Corp.*, 137 Ohio App. 3d 304, 315 (2d Dist. 2000). AAEO's ambiguity argument hinges entirely on extrinsic evidence of AAEO's performance, which the Court cannot consider in determining whether ambiguity exists. On its face, the contractual language (including the portion of section 7 referenced by NPI) is clear and unambiguous, setting forth with specificity both parties' performance obligations and rights upon an event of default. Finding no ambiguity, the Court concludes that the language of the Agreement presents no obstacle to summary adjudication. *See Inland Refuse Transfer Co v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St. 3d 321, 322 (1984) ("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.").

### 2. O.R.C. § 1302.67 Cannot Justify NPI's Failure to Pay

If a party develops reasonable grounds for insecurity, Ohio Revised Code § 1302.67 grants it the right to demand, in writing, "adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return." NPI's efforts to invoke § 1302.67 as a defense to summary judgment fail for at least two reasons.

First, the statute requires that a demand for adequate assurances be made in writing. The section of NPI's brief discussing § 1302.67 fails to include a single evidentiary reference, and review of the attached exhibits reveals no evidence that NPI ever made a specific demand. Simply possessing grounds for insecurity does not suffice; the party seeking assurances must communicate the grounds for insecurity, along with the demand, to the other party in writing. *See Scotts Co. v. Cent. Garden & Pet Co.*, No. 2:00-CV-755, 2002 WL 1578781, at *3-4

(S.D. Ohio Apr. 22, 2002); *Dunigan v. Rutherford*, No. 81-CA-32, 1982 WL 5430, at *4 (Ohio Ct. App. 5th Dist. Mar. 30, 1982); *see also City Blue Inc. v. Int'l News, Inc.*, No. Civ. A. 99-4445, 2000 WL 1053859, at *10 (E.D.P.A. July 31, 2000) (party's failure to clearly communicate demand for adequate assurances in writing prevented it from justifiably suspending performance even though it possessed reasonable grounds for insecurity). Because NPI failed to produce any evidence of a written demand for assurances, it cannot rely on § 1302.67 to justify its refusal to pay.

Second, even if NPI demanded, and AAEO refused to provide, adequate assurances of performance, § 1302.67 limits a party's suspension rights to situations where "he has not already received the agreed return." Here, NPI withheld performance despite having received the agreed return in the form of aluminum fencing and extrusion products it resold to third-parties at a profit. Accordingly, NPI cannot now avail itself of § 1302.67 to excuse its failure to pay. *See Agroindustrias Vezel, S.A. de C.V. v. H.P. Schmid, Inc.*, No. 92-15078, 1994 WL 12342, at *4 (9th Cir. Jan. 18, 1994) (receipt of goods called for by contract precluded suspension of performance under UCC § 2-609); *Magic Valley Foods, Inc. v. Sun Valley Potatoes, Inc.*, 10 P.3d 734, 439 (Idaho 2000) (same).

### 3. NPI Did Not Properly Revoke Acceptance Under O.R.C. § 1302.66

NPI further contends that it revoked its acceptance of the goods, based either "on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured," Ohio Revised Code § 1302.66(A)(1), or "without discovery of such non-conformity if his acceptance was reasonably induced whether by the difficulty of discovery before acceptance or by the seller's assurances," Ohio Revised Code § 1302.66(A)(2). But § 1302.66 places additional

limits on a party's ability to revoke acceptance, including the requirement that the revocation "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." Ohio Revised Code § 1302.66(B). The Court need not address NPI's arguments under § 1302.66(A) because, under the circumstances, NPI unquestionably failed to revoke its acceptance before "any substantial change in condition of the goods," thus failing to satisfy the mandate of subsection (B). By reselling the goods to its customers and permitting third-parties to install the product, NPI permitted a "substantial change in the condition of the goods" not caused by any defect in the product itself, which precludes it from complying with the statutory requirements for revoking its acceptance. *Alternative Aviation Servs., Inc. v. Meggitt (UK) Ltd.*, 207 F. App'x 506, 515 (6th Cir. 2006) (revocation of acceptance unavailable under Michigan's identical version of UCC where third-party customers possessed and used the goods); *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177, 181 (5th Cir. 1984) ("a buyer's act of dominion over the goods, including the sale of the goods, is inconsistent with a claim by the buyer that acceptance has been revoked").

### 4. NPI Is Not Entitled to Any of the Claimed Offsets

NPI contends that the amount of its liability should be adjusted to reflect (1) $86,000 worth of allegedly defective product NPI resold to non-party distributor Country Estate Fence of Uwchland ("CEFU") that AAEO purportedly agreed take back in exchange for a refund; (2) $81,316.28 in hardware CEFU purchased from AAEO; and (3) $8,000 worth of allegedly defective product NPI resold to CEFU, which in turn resold it to non-party Anew Fence.

Regardless of the legitimacy of these claims, there is no evidence that any such claims have been asserted by any third-parties against NPI (or AAEO). The first and third constitute potential warranty claims held by NPI's downstream customers; the second involves a direct obligation AAEO allegedly owed CEFU. Neither CEFU nor Anew Fence is a party to this action, and NPI fails to establish any basis for its standing to assert these claims in this litigation. Accordingly, they provide no basis for offsetting any of NPI's liability to AAEO.

Because the unrefuted evidence establishes that NPI owes AAEO $308,851.99 for duly-invoiced and delivered fencing products, judgment shall enter in AAEO's favor in that amount. AAEO is further entitled to interest at the contract rate of 9% per annum, but the Court is unable to determine the exact amount at this time because AAEO failed to submit the appropriate calculations.

### C. NPI's Counterclaim

Assuming a defensive posture, AAEO seeks summary judgment in its favor on the prayer for consequential damages set forth in NPI's counterclaim. Ohio's UCC permits contracting parties to exclude consequential damages, Ohio Revised Code § 1302.93(C), and the Agreement includes just such a limitation, stating (in all capital letters): "[AAEO] shall not be liable under any circumstances for consequential, punitive or incidental damages arising out of, or in connection with, this agreement or any goods or services sold to NPI." NPI offers no opposition to the enforcement of this provision. As such, AAEO's motion for summary judgment on this issue is granted, and NPI is precluded from recovering consequential damages on its counterclaim.

**III. Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED** in its entirety**.** AAEO is entitled to judgment against NPI on its claim for breach of contract in the amount of $308,851.99, plus pre-judgment and post-judgment interest at the contract rate of nine percent per annum. AAEO is further entitled to its reasonable attorney's fees and costs incurred in this collection effort. Accordingly, on or before June 22, 2010, AAEO shall submit a motion, along with supporting evidence, to permit the Court to determine the appropriate amount of pre-judgment interest and attorney's fees and costs. In addition, the Court finds that the Agreement bars NPI from recovering consequential damages on its counterclaim. Proceedings concerning NPI's counterclaim, as limited, shall proceed as scheduled.

**IT IS SO ORDERED**.

Dated: June 8, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**